IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JASON FIELDER,

        Plaintiff,

v.                            Civil Action No. 1:16CV23
                                                (STAMP)

R.V. COLEMAN TRUCKING, INC.,
ARKOS FIELD SERVICES, LP,
EQT CORPORATION,
EQUITRANS, LP d/b/a EQT MIDSTREAM
and EQT PRODUCTION COMPANY,

        Defendants,

and

R.V. COLEMAN TRUCKING, INC.,

        Third-Party Plaintiff,

v.

MEC CONSTRUCTION, LLC,

        Third-Party Defendant.


**MEMORANDUM OPINION AND ORDER**
**REGARDING MOTIONS IN LIMINE TO EXCLUDE SUBSEQUENT**
**REMEDIAL MEASURES AND INAPPLICABLE REGULATIONS**

    Pending before this Court are two motions in limine filed by third-party defendant MEC Construction, LLC ("MEC"). The trial of this civil action[1] is scheduled to commence on March 20, 2018.

    By previous memorandum opinion and order (ECF No. 233), this Court deferred ruling on the Motion in Limine to Exclude Evidence of Inapplicable Regulations and Standards filed by MEC

---

[1]For a more thorough background of this civil action, see ECF No. 207.

Construction, LLC (ECF No. 152), and deferred ruling on the Motion in Limine to Exclude Evidence of Subsequent Remedial Measures filed by MEC Construction, LLC (ECF No. 154). Following the initial pretrial conference in this civil action, this Court entered an order directing the parties to submit briefs as to the issues raised during the pretrial conference. ECF No. 192. Accordingly, the parties filed supplemental briefs addressing, among other things, the applicability of regulations in the instant matter as a question of law for the Court to decide or as a question of fact to be submitted to the jury by and through competing expert testimony and jury instruction.

Following the pretrial conference, this Court also entered an order granting the emergency motion to continue trial of defendant and third-party plaintiff R.V. Coleman Trucking, Inc. ("R.V. Coleman") (ECF No. 209) and ordered the trial be continued to March 20, 2018. ECF No. 210. Additionally, this Court ordered that a supplemental pretrial conference/final settlement conference be held on March 12, 2018 at 10:00 a.m.

During this time, but before the supplemental pretrial conference, the parties informed the Court that a settlement had been reached between the plaintiff and the defendants. However, the parties represented that the defendants were unable to reach an agreement as to apportionment of fault, and intend to go forward with the jury trial on the issue of allocation of liability among

2

the remaining above-named defendants.  The defendant parties stated and agree that there are no contested issues of damages.  The parties represented that the settlement impacted the parties' proposed supplemental pretrial order (ECF No. 235), which was submitted on March 5, 2018 and the Court then entered an order confirming the pronounced order of the Court following the supplemental pretrial conference which stated the remaining issues not resolved by the settlement as clarified by the remaining parties (ECF No. 238).

Specifically, this Court inquired as to whether or not the applicability of regulations in the instant matter is still a contested issue among the defendants.  Following the response of the remaining parties, this Court noted that the issue of applicability of regulations as raised in MEC's motion in limine to exclude evidence of inapplicable regulations and standards (ECF No. 152) and the supplemental memoranda submitted by the parties, is still pending.  Also, this Court inquired as to whether or not subsequent remedial measures are still a contested issue among the defendants.  Following the response of the remaining parties, this Court noted that the issue of subsequent remedial measures as raised in MEC's motion in limine to exclude evidence of subsequent remedial measures (ECF No. 154) is contested and still pending.

Now before the Court are two pending motions in limine which have been fully briefed: (1) Motion in Limine to Exclude Evidence

of Inapplicable Regulations and Standards filed by MEC Construction, LLC (ECF No. 152) and (2) Motion in Limine to Exclude Evidence of Subsequent Remedial Measures filed by MEC Construction, LLC (ECF No. 154).

This Court has reviewed the fully briefed motions and the memoranda and exhibits submitted by the parties. This Court will address those motions in limine and set forth its findings, as discussed below.

1. Inapplicable Regulations and Standards

Third-party defendant MEC Construction, LLC filed a motion in limine to exclude evidence of inapplicable regulations and standards (ECF No. 152), and cites to several regulations and standards which it argues are inapplicable to the work performed by MEC.

R.V. Coleman filed a response in opposition (ECF No. 158) and argues that MEC's motion should be denied because the mere fact that the parties disagree as to the applicability of regulations/ standards in a deliberate intent action is not grounds for exclusion of said regulations/standards. R.V. Coleman states that pursuant to Johnson v. Brayman Const. Corp., No. 13-0598, 2014 WL 1272534 (W. Va. Mar. 28, 2014), when there is a disagreement among the parties as to the applicability of regulations in a deliberate intent action, the proper course of action is to permit the jury to hear expert testimony from both sides on the topic. ECF No. 158.

Plaintiff filed a response in opposition (ECF No. 166) and states that to the extent that any of the statutes, rules, regulations, or standards cited by plaintiff and/or R.V. Coleman satisfy, or could arguably satisfy, the above criteria relevant to this case, those standards are relevant and must be admitted into evidence. ECF No. 166. Further, plaintiff argues in accordance with Johnson v. Brayman, that "experts [are] permitted to testify to their respective opinions about the applicability of certain regulations to the workplace at issue." ECF No. 166. Plaintiff contends that the fact that there is disagreement to the applicability of certain statutes, rules, regulations, or standards does not support the exclusion of the regulations; rather, it invites expert testimony thereupon. Id. Plaintiff adds that to the extent that this Court finds, as a matter of law, that any of the statutes, rules, regulations, or standards cited by the experts for plaintiff and/or R.V. Coleman do not satisfy the above criteria, then the plaintiff does not disagree that those particular provisions would not be relevant to the deliberate intent claims against defendant MEC, but may, however, be relevant for another purpose or against another party. Id.

This Court entered an order (ECF No. 192) following the pretrial conference in this civil action, directing the parties to submit supplemental briefs, in part, as to the applicability of regulations in the instant matter as a question of law for the

Court to decide or as a question of fact to be submitted to the jury by and through competing expert testimony and jury instruction.

In the supplemental memorandum, plaintiff[2] asserts that the West Virginia Supreme Court of Appeals handles expert testimony regarding state or federal safety statutes and regulations for the purposes of establishing the third prong of the deliberate intent standard in a different manner than the United States Court of Appeals for the Fourth Circuit handles expert testimony regarding regulations generally. Therefore, "the testimony should be handled differently depending upon the purpose for which it is being offered." ECF No. 220 at 2. Plaintiff asserts "[t]o the extent that any of the statutes, rules, regulations, or standards cited by Plaintiff and/or RV Coleman satisfy, or could arguably satisfy, the above criteria relevant to this case, those standards are relevant and should be admitted into evidence." ECF No. 220 at 3-4. Further, plaintiff states that "in accordance with <u>Johnson v. Brayman</u>, [] the West Virginia Supreme Court of Appeals has held that 'experts [are] permitted to testify to their respective opinions about the applicability of certain regulations to the workplace at issue'." <u>Id.</u> Plaintiff notes that the Fourth Circuit

---

[2]This Court notes that plaintiff is no longer a party to this civil action following the settlement agreement reached by the parties. However, this Court has considered the arguments and legal authority advanced by the plaintiff in his supplemental brief in its consideration of this issue.

has held that "the jury must be instructed on the law by the court and not by the witnesses" and that an expert should not be permitted "to give opinions on what the law means or how it is interpreted." Id. Plaintiff contends that "[w]hile the Court is required to tell the jury what the law is, experts may testify as to whether certain transactions or actions comply with regulations." Id. at 5. Therefore, plaintiff argues, "while the parties' experts may not tell the jury what the Federal Motor Carrier Safety Regulations mean, they should be permitted to testify whether certain conduct or load securement practices comply with the regulations as explained by the Court." Id. Plaintiff adds, "[u]nder no circumstances, however, should an expert be permitted to tell a jury that the law says something that it does not, or that the law does not apply when it does – that is the province of the Court." Id.

Defendant and third-party plaintiff R.V. Coleman filed a memorandum of law regarding the applicability of regulations (ECF No. 224) and asserts that "[i]n a deliberate intent action, the question of whether a specific statute, rule, regulation, or industry standard is applicable to the accident at issue and has been violated is a question of fact to be determined by the jury." ECF No. 224 at 2. Thus, pursuant to the deliberate intent statute, in a jury trial, R.V. Coleman argues that the trier of fact determines whether there was a violation of a statute, rule,

regulation, or industry standard and whether or not the statute, rule, regulation, or standard was specifically applicable to the particular work and working condition involved. Id. R.V. Coleman states that in the case of Johnson v. Brayman, the West Virginia Supreme Court found that where there is competing expert testimony regarding the applicability of statutes, rules, regulations, or standards, the Court should let the experts testify to their respective opinions and submit the issue to the jury. Id. at 3. Accordingly, R.V. Coleman submits that the question of whether a specific statute, rule, regulation, or industry standard is applicable to the accident at issue and has been violated is a question of fact to be determined by the jury. Id. Therefore, R.V. Coleman argues that "the Court should instruct the jury as to all statutes, rules, regulations, or industry standards the parties assert are applicable to the accident at issue." Id. at 6.

Third-party defendant MEC filed a memorandum of law regarding the application of regulations in this matter (ECF No. 230) and asserts "[t]he 2005 version of the deliberate intent statute, i.e. the version controlling this case, is silent as to how the determination is to be made regarding the applicability of safety statutes, rules, regulations, or commonly accepted and well-known safety standards." ECF No. 230 at 5. However, MEC adds, in the 2015 amendment to the deliberate intent statute, West Virginia Code § 23-4-2(d)(2)(iii)(II)(c)(2015), the Legislature cured this

omission, including the following language into the statute: "The applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination." <u>Id.</u> MEC adds that "[t]his is further discussed in the notes pertaining to the West Virginia Pattern Jury Instructions § 702." ECF No. 230 at 5. MEC contends that plaintiff's arguments are misplaced and that <u>Bammerlin v. Navistar Int'l. Transp. Corp.</u>, 30 F.3d 898, 900 (7th Cir. 1994), "is virtually identical to the scenario presented in this case, in which experts for the plaintiff and for R.V. Coleman have testified that MEC Construction violated certain regulations and standards which are not even applicable to the work being performed by MEC Construction." ECF No. 230 at 7. MEC contends that this Court should determine whether any of the regulations and standards cited by plaintiff's and R.V. Coleman's experts are applicable to MEC Construction and may serve as the basis for establishing the following element of a deliberate intent claim:

> That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions.

W. Va. Code § 23-4-2(d)(2)(ii)(C)(2005).

This Court finds that under the amended version of the statute, W. Va. Code § 23-4-2(d)(2)(iii)(II)(a-c)(2015),[3] the statute, rule, or regulation: "(a) Must be specifically applicable to the work and working condition involved as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions; [and] (b) Must be intended to address the specific hazard(s) presented by the alleged specific unsafe working condition[.]" Further, the amended version of the deliberate intent statute also provides that "(c) [t]he applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination." Id. Thus, it is clear that the Legislature cured the previous omission in the 2005 version of the statute by including the language of subsection (c), and thus, removing the potential for submission of

---

[3](II) If the specific unsafe working condition relates to a violation of a state or federal safety statute, rule or regulation that statute, rule or regulation:

(a) Must be specifically applicable to the work and working condition involved as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(b) Must be intended to address the specific hazard(s) presented by the alleged specific unsafe working condition; and,

(c) The applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination.

W. Va. Code § 23-4-2(d)(2)(iii)(II)(a-c)(2015)

such a decision to a jury.  This Court notes that the West Virginia Supreme Court's decision in <u>Johnson v. Brayman</u>, which found that where there is competing expert testimony regarding the applicability of statutes, rules, regulations, or standards, the Court should let the experts testify to their respective opinions and submit the issue to the jury, is premised upon the prior version of the deliberate intent statute as codified in the 2005 amendments to West Virginia Code § 23-4-2(d)(2).  It is well settled, and not contested amongst the parties, that the deliberate intent action asserted against MEC in the instant matter is governed by West Virginia Code § 23-4-2(d)(2)(2005).[4]  However, to the extent that the Legislature's most recent amendments to the West Virginia deliberate intent statue clarify that the applicability of any such state or federal safety statute, rule or regulation is a matter of law for judicial determination, and do not substantially alter change the meaning of the statute at issue, this Court will consider the newly amended 2015 version of the statute at issue in its application of West Virginia Code § 23-4-2(d)(2)(2005).[5]  Specifically, this Court will consider the

---

[4]<u>See</u> <u>Kane v. Corning Glass Works</u>, 175 W. Va. 77, 78 n.1, 331 S.E.2d 807, 808 n.1 (1984) (An employee's deliberate intent action is governed by the statute in effect at the time of the employee's injury.).

[5]<u>See</u> <u>United States v. Fausto</u>, 484 U.S. 439, 453, 108 S. Ct. 668, 676–77, 98 L.Ed.2d 830 (1988) (discussing the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, [which] necessarily

2015 amendments to the deliberate intent statute for the limited purpose of resolving the issue of whether or not the applicability of regulations is a question of judicial determination.

The Legislature's amendment, as it reads in the 2015 version, expressly states that applicability of regulations is a matter of judicial determination.  Thus, this Court declines to follow the authority cited by R.V. Coleman, the West Virginia Supreme Court's unpublished memorandum decision in <u>Johnson v. Brayman</u>.  Rather, this Court finds that the applicability of regulations in the instant matter is a question of law to be decided by the Court.[6]

Accordingly, the regulations presented by MEC's motion in limine and contested by R.V. Coleman are addressed, in turn, below.

    A.    <u>29 C.F.R. § 1926.250(a)</u>

Title 29, Code of Federal Regulations, Section 1926.250(a)(l) provides:  "All materials stored in tiers shall be stacked, racked, blocked, interlocked, or otherwise secured to prevent sliding, falling or collapse."

MEC contends that the pipes that rolled off of the trailer and injured Mr. Fielder were not stored in tiers, rather, the pipes

---

assumes that the implications of a statute may be altered by the implications of a later statute").

[6]<u>See</u> <u>Bammerlin v. Navistar Int'l. Transp. Corp.</u>, 30 F.3d 898, 899 (7th Cir. 1994) (holding that "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts.  It is a question of law, to be resolved by the court.").

were loaded onto a flatbed trailer for transport, not for storage, and the regulation would not apply until the pipes were stored after being unloaded from the truck. ECF No. 153 at 3. This Court agrees, and finds R.V. Coleman's response in opposition unpersuasive. ECF No. 158 at 4. <u>Merriam-Webster Online Dictionary</u> defines the term "tier" to mean "a row, rank, or layer of articles; especially: one of two or more rows, levels, or ranks arranged one above another." Moreover, the term at issue is "tiers," which is clearly the plural form. This definition shows that the term "tiers" clearly refers to more than one row or level. Also, even if the term "tier" could be one row, the pipes at issue were not in storage as they were not being stored on the truck under a common sense view of the term. Here, the Court finds that the regulation does not apply to the work being performed by MEC in that the pipes at issue were not "stored" and not in "tiers." Therefore, the Court finds that this standard is not specifically applicable to the work and working condition involved, and fails to satisfy the requirements of the deliberate intent statute.

   B.  <u>ANSI A10.42</u>

   American National Standard ("ANSI") A10.42 concerns the "Safety Requirements for Rigging Qualifications and Responsibilities" and "establishes minimum criteria of knowledge and performance requirements for a qualified rigger in the construction industry" with the stated purpose being "to assist in

achieving reasonable safety of all persons and materials during the process of, or as the result of, rigging, lifting, or moving of loads."

MEC contends "[c]learly, the accident was entirely unrelated to the rigging, lifting, or moving of loads."  ECF No. 153 at 3. R.V. Coleman, in response, states that "there is an abundance of evidence in this case which demonstrates that the accident occurred during MEC's unloading process which included rigging, lifting, or moving of loads."  This Court finds, at this point, that there is conflicting evidence as to this issue.  The Court believes it is appropriate to wait and consider the testimony and evidence presented at trial in order to determine what evidence there is that shows MEC engaged in the unloading process, specifically, the rigging, lifting, or moving of loads.  While the language of this regulation is general in nature, at this time, this Court finds that it is appropriate to defer its finding as to whether this standard is specifically applicable to the work and working condition involved, and whether or not this particular standard satisfies the requirements of the deliberate intent statute.

C.   29 C.F.R. § 1926.1401, § 1926.1425(a),(b),(c), and (e)

The scope of this standard "applies to power-operated equipment, when used in construction, that can hoist, lower and horizontally move a suspended load."  29 C.F.R. § 1926.1400(a). Further, § 1926.1425 deals with "keeping clear of the load."

MEC asserts that this regulation is inapplicable in that the "accident had nothing to do with the operation of power-operated equipment" and adds "nothing had been moved or lifted off of the trailer at the time of the accident." ECF No. 153 at 4. R.V. Coleman contends that "MEC was in the process of rigging the straps of the zoom boom [forklift] to the pipe to lift the same, raising the zoom boom to level out the straps, or actually lifting pipes from the trailer." ECF 158 at 5.

While the evidence shows that an MEC foreman was using a "zoom boom" fork lift, and MEC employees were in the process of rigging straps to the pipes at issue, it is unclear if the forklift was actually being used to lift or move the pipes at issue, or was merely in the vicinity of the trailer when the accident took place. This Court finds, at this point, that there is conflicting evidence as to this issue. The Court believes it is appropriate to wait and consider the testimony and evidence presented at trial in order to determine what evidence there is that MEC was utilizing power-operated equipment that can hoist, lower and horizontally move a suspended load. At this time, this Court finds that it is appropriate to defer its finding as to whether this standard is specifically applicable to the work and working condition involved, and whether or not this particular standard satisfies the requirements of the deliberate intent statute.

D. <u>ANSI Al0.13</u>

ANSI Al0.13, Safety Requirements for Steel Erection, "establishes safety requirements for erecting, handling, fitting, fastening, reinforcing and dismantling of structural steel, plate steel, steel joist, and metal deck at a final in-place field site during construction, maintenance and dismantling operations."

MEC asserts that "[i]t is undisputed that Mr. Fielder was injured by pipes, not by structural steel, plate steel, steel joist, or metal deck" and adds that "[n]o such materials were even present on the trailer from which the pipes fell" and "MEC was not engaged in 'steel erection' at the subject compressor site." ECF No. 153 at 4. MEC's expert Rob Medlock opines that the piping being unloaded does not meet the definition of structural steel. R.V. Coleman states in response that its expert, Stanley Pulz, a voting member of the committee which promulgated this standard, has opined that the job procedures being performed by MEC at the time of the accident, with regard to unloading trucks loaded with steel pipe, were identical to the job procedures and hazards addressed in this standard. ECF No. 158 at 6.

<u>Merriam-Webster Online Dictionary</u> defines the term "structural steel" to mean "rolled steel in structural shapes; steel suitable for structural shapes." Here, the object at issue is a pipe. The Court finds, at this time, that there is a dispute as to whether the pipe at issue meets the definition of "structural steel." The

Court believes it is appropriate to wait and consider the testimony and evidence presented at trial in order to determine what evidence there is that the pipes at issue meet or do not meet the definition of "structural steel." This Court notes that pipes are not mentioned in the regulation and are not listed under the definition of "steel erection" under the regulation. At this time, this Court finds that it is appropriate to defer its finding as to whether this standard is specifically applicable to the work and working condition involved, and whether or not this particular standard satisfies the requirements of the deliberate intent statute.

   E.  <u>Federal Motor Carrier Safety Regulations</u>

   Federal Motor Carrier regulation 49 C.F.R. § 393.106, sets forth the requirements for securing articles of cargo during transport by a commercial motor vehicle. Specifically, the regulation states, in pertinent part:

   (c)  Cargo placement and restraint.

   (1)  Articles of cargo that are likely to roll must be
   restrained by chocks, wedges, a cradle or other
   equivalent means to prevent rolling. The means of
   preventing rolling must not be capable of becoming
   unintentionally unfastened or loose while the vehicle is
   in transit.

49 C.F.R. § 393.106(c)

   In its motion, MEC submits, "[w]hile MEC does not dispute that this section applies to the accident, it is not applicable to the work of MEC." ECF No. 153 at 5. This Court notes that in response to MEC's motion in limine, R.V. Coleman states: "RV Coleman agrees

17

that the FMCSRs were inapplicable to the accident at issue as the cargo was not in the course of transportation." ECF No. 158 at 6. This Court finds that the Federal Motor Carrier Safety Regulations ("FMCSRs") are inapplicable to the work performed by MEC at the time of the subject accident as the pipes at issue were no longer "in transport".[7] This Court notes that in response to MEC's motion in limine, R.V. Coleman states: "RV Coleman agrees that the FMCSRs were inapplicable to the accident at issue as the cargo was not in the course of transportation." ECF No. 158 at 6. Thus, evidence pertaining to the FMCSRs shall be excluded from the consideration of the deliberate intent claim asserted against MEC as the Court finds that this standard is not specifically applicable to the work and working condition involved, and fails to satisfy the requirements of the deliberate intent statute.

Accordingly, the motion in limine to exclude evidence of inapplicable regulations and standards filed by MEC Construction, LLC (ECF No. 152) is granted in part and deferred in part.

---

[7]See also Hoggard v. Arabi Cattle Co., No. 3:15CV00323 JM, 2017 WL 2532962, at *2 (E.D. Ark. June 9, 2017) (citing Turner v. Goodyear Tire & Rubber Co., No. 02C5012, 2004 WL 3119008, at *5 (N.D. Ill. Dec. 2, 2004) (finding "that the regulations clearly indicate that the FMCSR were not intended to cover or create a duty in regards to accidents that occur while unloading cargo in a private loading area")); AmeriGas Inc. v. Landstar Ranger, Inc., 230 Cal. App. 4th 1153, 179 Cal. Rptr. 3d 330 (2014) (holding "Federal Motor Carrier Safety Regulations which require a carrier to ensure its drivers have adequate training or experience in securing loads on their trucks and to ensure its drivers adhere to proper securement methods and procedures do not apply to unloading cargo.").

2. <u>Subsequent Remedial Measures</u>

Third-party defendant MEC Construction, LLC filed a motion in limine to exclude evidence of subsequent remedial measures (ECF No. 154) under Federal Rule of Evidence Rule 407. MEC argues that subsequent remedial measures are not admissible to prove negligence, culpable conduct, or a need for a warning instruction, and that this evidence is not relevant to proving the elements of a deliberate intent claim. ECF No. 154.

R.V. Coleman filed a response in opposition (ECF No. 159) and argues that MEC's motion should be denied because post-accident policies for unloading pipe from trailers that are not pre-chocked are relevant to prove control and feasibility, and for impeachment, which are stated exceptions o the rule. ECF No. 159. Defendant states that MEC has argued that it was not responsible for placing chock or block on the pipes at issue and that the same should be accomplished by R.V. Coleman. <u>Id.</u> However, R.V. Coleman asserts, subsequent to the accident, MEC developed a written policy with specific procedures for handling pipes on trailers which do not contain chocks or uprights, and this evidence should come in under the "another purpose" subset of Rule 407. <u>Id.</u> R.V. Coleman argues that "the fact that MEC developed a specific policy for unloading of pipe that is not secured by chocks subsequent to the accident at issue demonstrates that there was nothing to prevent MEC chocking and blocking the pipes prior to the accident at issue and,

therefore, has a direct bearing on the feasibility of precautionary measures." Id. Thus, R.V. Coleman states that "MEC's Motion should be denied as MEC's post-accident policies for unloading pipe on trailers that is not pre-chocked are relevant to prove control, feasibility, and impeachment." Id.

Plaintiff Fielder filed a response in opposition (ECF No. 168) and states that MEC's motion in limine seeking to exclude entry of any subsequent remedial measure must be denied as they are relevant to establishing the specific unsafe working condition element of West Virginia's deliberate intent statute, W. Va. Code § 23-4-2(B), and to proving, at a minimum, control and potentially other facts, such as feasibility of precautionary measures depending on positions taken by MEC at trial. Id.

Specifically, MEC moves to exclude all evidence relating to subsequent remedial measures taken by MEC after the plaintiff's accident under Federal Rule of Evidence 407, which states that:

> [w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 704.

Federal Rule of Evidence 407 is designed to protect the important policy of encouraging defendants to repair and improve their products and premises without the fear that such actions will be used later against them in a lawsuit. <u>Werner v. Upjohn Co.</u>, 628 F.2d 848, 853 (4th Cir. 1980). Rule 407, which enacts the common law rule excluding subsequent remedial measures to prove negligence, does, however, permit evidence of subsequent remedial measures to be used to prove the feasibility of such measures, but only if feasibility is controverted. <u>Id.</u> at 853. The exceptions listed in Rule 407 are illustrative and not exhaustive. <u>Id.</u> at 856. Several exceptions to the rule have developed, but it is clear that they must be narrowly construed if the central policy behind the rule is to be effectuated. <u>Id.</u> at 855.

R.V. Coleman asserts that "the fact that MEC developed a specific policy for unloading of pipe that is not secured by chocks subsequent to the accident at issue demonstrates that there was nothing to prevent MEC chocking and blocking the pipes prior to the accident at issue and, therefore, has a direct bearing on the feasibility of precautionary measures." ECF No. 159 at 3. The last sentence in Rule 407, the part of the rule under which evidence may be admissible for this purpose, has a threshold requirement that the particular issue must be "disputed." Fed. R. Evid. 407. MEC submitted at the supplemental pretrial conference in this civil action that "feasability" is not in issue as it is

not controverted. To that extent, there is no argument to be made under the feasability exception to the rule.

Thus, this Court is only left to determine whether the evidence of subsequent remedial measures taken by MEC after the plaintiff's accident comes in under the "control" exception. R.V. Coleman's argument can be reduced to its assertion that "[t]he subsequently developed unloading policies of MEC rebut MEC's assertion that it was not MEC's responsibility to place chocks and blocks on the pipes prior to beginning the unloading process." ECF No. 159 at 3.

This Court finds R.V. Coleman's argument unpersuasive and that such evidence is inadmissable. The evidence shows that the training conducted and procedures developed by MEC took place after the accident involving the plaintiff occurred. On the record, there is no indication that this post-accident conduct could actually show pre-accident control of the pipes at issue. MEC did not have "control" of the incoming trailer that it did not load or transport. MEC's written "Safety Reminder"[8] setting forth instructions to be followed for the proper loading and unloading of pipes is a subsequent remedial measure, which is not admissible to prove a defendant's negligence. Werner v. Upjohn Co., 628 F.2d 848, 853 (4th Cir. 1980). This Court finds that the subsequent

---

[8]See "MECOOJ 368-1369" attached to R.V. Coleman's response in opposition as "Exhibit A." ECF No. 159-1.

remedial measures taken by MEC after the plaintiff's accident is the type of situation contemplated by the rule. Rule 407 promotes an important policy of encouraging subsequent remedial measures and, given the particular facts at issue, the Court finds that Rule 407 is to be directly applied rather than an exception. The risk that a jury may draw inferences from this evidence that Rule 407 identifies as impermissible leads the Court to further exclude the evidence under Rule 403. <u>See</u> <u>Yates v. Ford Motor Co.</u>, No. 5:12-CV-752-FL, 2015 WL 2189774, at *8 (E.D.N.C. May 11, 2015). To the extent evidence of post-accident policies implemented by MEC are offered to show knowledge or causation, the Court finds this evidence should be excluded under Rule 403. The factors of undue prejudice, confusion of issues, misleading the jury, and waste of time remain for consideration under Rule 403.[9] This Court finds that introduction of such evidence would likely confuse and mislead the jury to consider MEC's post-accident policies as evidence of negligence. This is exactly the scenario contemplated by Rule 407 and is impermissible under the rule.

The evidence shows that there is no dispute as to which role each party would play. Arkos was to load to trailer, R.V. Coleman was to transport the trailer, and MEC was to unload the trailer. However, it is unclear, and disputed, if the "unloading phase" ever

---

[9]<u>See</u> Notes of Advisory Committee on Rule 407.

actually began.  This type of issue is not the type of "control" issue that would merit consideration of the exception.

Accordingly, the motion in limine to exclude evidence of subsequent remedial measures filed by MEC Construction, LLC (ECF No. 154) is GRANTED.  Exceptions may arise where the defendant attempts to make offensive use of the exclusion of this evidence. Should MEC place these issues in controversy at the time of the trial or offer evidence that would open the door to using subsequent remedial measures as impeachment evidence, this Court's ruling may change.  See Specialty Prod. Int'l, Ltd. v. Con-Way Transp. Servs., Inc., 410 F. Supp. 2d 423, 428 (M.D.N.C. 2006).

Accordingly, the Motion in Limine to Exclude Evidence of Inapplicable Regulations and Standards filed by MEC Construction, LLC (ECF No. 152) is GRANTED in part and DEFERRED in part, and the Motion in Limine to Exclude Evidence of Subsequent Remedial Measures filed by MEC Construction, LLC (ECF No. 154) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    March 19, 2018


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE